**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO: ________** |
| **v.** | : | **DATE FILED: ________** |
| **TENIA A. THOMPSON** | : | **VIOLATIONS:**<br>**18 U.S.C. § 1343 (wire fraud – 17 counts)**<br>**18 U.S.C. § 1344 (bank fraud – 2 counts)**<br>**26 U.S.C. § 7206(1) (filing a false tax return – 1 count)**<br>**26 U.S.C. § 7206(2) (aiding the filing of a false tax return – 49 counts)**<br>**Notices of forfeiture** |

**INDICTMENT**

**COUNTS ONE THROUGH SEVENTEEN**
**(Wire Fraud)**

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

**The Defendant**

1. Defendant TENIA A. THOMPSON was a resident of Philadelphia, Pennsylvania, and the owner and operator of a financial services and tax preparation business called "Thompson Business and Tax Solutions" and "TBTS Taxes," collectively referred to here as "TBTS." Defendant THOMPSON, through TBTS, prepared tax returns for individuals and businesses and helped them apply for and obtain COVID-19 disaster-related loans and tax benefits. In her personal tax returns, defendant THOMPSON also identified her business operations as "Tenia Azzaam-Thompson" and identified herself as a "consultant."

2. The Internal Revenue Service ("IRS") identified tax preparers by a number, referred to as a preparer's tax identification number or "PTIN." The IRS required preparers to use this number when filing tax documents on behalf of clients so that the documents identified the preparer. Defendant TENIA A. THOMPSON's assigned PTIN was P02226615. Defendant THOMPSON also used the PTIN P02226616, which was assigned to a retired accountant in Florida.

**The Small Business Administration**

3. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy in a variety of ways, including by fostering the establishment and viability of small businesses and aiding in their economic recovery after community disasters.

4. As part of its efforts, the SBA provided for business loans through banks, credit unions, and other lenders. Those loans had government-backed guarantees.

**The CARES Act, PPP, and EIDL Programs**

5. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion in PPP funding. In December 2020, Congress authorized over $280 billion in another round of PPP

funding, which was available to businesses that had already obtained a PPP loan during 2020. These loans are referred to as "second draw" loans.

6. To obtain a PPP loan, a qualifying business needed to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and to make affirmative certifications to be eligible for the PPP loan. For example, in the PPP loan application, the business, through its authorized representative, was required to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP. In addition, as part of the PPP loan application process, businesses had to provide documentation showing their payroll expenses and other information.

7. A PPP loan application had to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own funds, which were 100% guaranteed by the SBA. In processing the PPP loan, the lender transmitted data from the loan application to the SBA, including information about the borrower, the total amount of the loan, and the identified number of employees.

8. Proceeds from PPP loans were required by law to be used only for certain permissible expenses, *e.g.*, payroll costs, certain insurance premiums and costs, interest on mortgages, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness if the business spent the loan proceeds on permissible items within a designated time and used a certain portion of the loan toward payroll expenses.

9. The Department of Treasury's guidance on PPP loans stated that financial professionals who assisted and prepared an application for PPP loans should receive a percentage of the loans as follows: a 1% fee on loans below $350,000; a .5% fee on loans between $350,001 and $2,000,000; and a .25% fee on loans in amounts above $2,000,000.

10. In addition, the SBA administered the Economic Injury Disaster Loan ("EIDL") program, which provided small businesses with working capital loans of up to $2 million (after October 8, 2021) to help overcome temporary loss of revenue because of a declared disaster. The CARES Act provided new rules that made it easier for small businesses that were economically damaged by the COVID-19 pandemic to apply for and quickly receive loans. Similar to the rules relating to PPP loans, the SBA required that proceeds of EIDL loans must be used for certain legitimate and ordinary business expenses.

**The Lenders**

11. Kabbage, Inc. ("Kabbage"), was an online financial services company based in Atlanta, Georgia. Kabbage participated in the PPP by, among other things, issuing PPP loans directly as an SBA-approved lender, as well as in partnership with other SBA-approved lenders.

12. Cross River Bank ("Cross River") was a financial institution headquartered in Fort Lee, New Jersey, and insured by the Federal Deposit Insurance Corporation ("FDIC") with Certificate Number 58410. Cross River participated in the PPP by, among other things, issuing PPP loans directly as an SBA-approved lender.

13. Blue Ridge Bank, N.A., ("Blue Ridge") was a financial institution headquartered in Martinsville, Virginia, and insured by the FDIC with Certificate Number

35274. Blue Ridge participated in the PPP by, among other things, issuing PPP loans directly as an SBA-approved lender.

**Internal Revenue Service Form 941 Filings**

14. The CARES Act also provided certain tax credits designed to encourage businesses to retain employees on their payroll during the COVID-19 pandemic. Two types of credits, employee retention credits ("ERC") and qualified sick and family leave credits ("QSFL") (referred to collectively as "COVID-19 related tax credits"), were claimed by employers by filing an Employer's Quarterly Federal Tax Return, Form 941, or an Adjusted Employer's Quarterly Federal Tax Return or Claim of Refund, Form 941X (collectively and interchangeably, "Form 941," "Forms 941," or "Form 941s"), with the IRS for the relevant quarter or quarters.

15. The ERC was a refundable federal tax credit for businesses that maintained employees on the payroll during COVID-19 shutdowns or experienced significant revenue declines. It applied to qualified wages paid between on or about March 13, 2020, and on or about September 30, 2021.

16. The QSFL was a refundable tax credit for businesses to offset the cost of providing paid leave for COVID-19-related reasons. These credits reimbursed businesses for wages paid for leave from on or about April 1, 2020, through on or about September 30, 2021.

17. Generally, qualified wages for the ERC and QSFL must have been wages that were subject to Social Security and Medicare taxes and reported on an IRS Form W-2. Thus, qualified wages did not include "under the table" cash wages, payments to independent contractors, or non-employee compensation.

18. The Forms 941 reported the business name, its address, and the employer's Employer Identification Number ("EIN"), also known as the Federal Employer

Identification Number or the Federal Tax Identification Number. The Forms 941 also reported the number of employees of the business (line 1) and the wages paid by the business (line 2) during that quarter.

19. Critically, to qualify for the ERC and related QSFL credits, the filing business must have paid employees during certain quarters during the COVID-19 pandemic. Moreover, for the QSFL credit, the filing business must have paid sick or family leave wages. Employers were not eligible to receive both the ERC and QSFL credit with respect to the same wages.

20. Employers that paid sick and family leave wages in quarters in 2020, 2021, 2022, and 2023 for leave that employees took after March 31, 2020, and before October 1, 2021, were eligible to claim a credit for qualified sick and family leave wages on Forms 941 for the quarters in which those qualified wages were paid.

21. For the COVID-19 related credits, based on the numbers reported on the Form 941, the U.S. Treasury issued a check in the name of the employer identified on the Form 941 and mailed the check to the employer's address as it appeared on the Form 941. Each Form 941 represented a separate claim to the government.

22. The IRS relied on the information reported on the Form 941 filed for each quarter, or for each quarter in the event the Form 941 was filed late, about the purported business' existence, number of employees, and wages paid to the employees to make the credit payments to employers.

23. The Forms 941 could be electronically filed with the IRS using tax preparation software.

## THE SCHEME TO DEFRAUD

24. From in or about April 2020 through at least in or about June 2024, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TENIA A. THOMPSON**

devised and intended to devise a scheme and artifice to defraud the SBA, Kabbage, Cross River, Blue Ridge, and other SBA-approved PPP lenders, and the Internal Revenue Service, and to obtain money and property, that is, tens of millions of dollars in disaster-related loans and disaster-related tax benefits on behalf of clients, by means of materially false and fraudulent pretenses, representations, and promises.

25. The purpose of the scheme was for defendant TENIA A. THOMPSON to enrich herself and others by fraudulently obtaining PPP and EIDL loan proceeds on behalf of clients through loan applications that contained false financial information about the clients' businesses. After obtaining these loans to which her clients were not entitled, defendant THOMPSON charged the clients exorbitant fees for the loans. Defendant THOMPSON then sought tax benefits based on false information, often related to the false information in the fraudulent loan applications, to generate additional fraud proceeds for her clients and herself.

## MANNER AND MEANS

It was part of the scheme that:

26. In or about April 2020, defendant TENIA A. THOMPSON began recruiting and engaging clients for whom she could submit applications for disaster-related loans from financial services companies and the government. At times, defendant THOMPSON gained access to these clients through individuals to whom she paid referral fees for sending clients to her and TBTS.

27. Defendant TENIA A. THOMPSON represented to potential clients that she was an expert in disaster-related loans and offered to obtain these loans for any individual who owned a business – with little or no regard for whether the business had the financial operations necessary to qualify for a loan. Defendant THOMPSON told potential clients that she would help them improve their business through this loan program. At times, she described her services as helping clients achieve "generational wealth" through these loans.

28. Defendant TENIA A. THOMPSON's efforts resulted in her engaging dozens of clients who used her services to obtain disaster-related loans. Many of these clients owned small businesses that generated, at most, little revenue and paid, at most, small amounts of wages to small numbers of employees.

29. When a client agreed to use the services of defendant TENIA A. THOMPSON and TBTS to pursue a disaster-related loan, defendant THOMPSON requested that the client provide her with minimal background and financial information related to the client's company. Defendant THOMPSON then handled all aspects of the loan application without significant additional involvement from the client.

30. In pursuing PPP loans for a client, defendant TENIA A. THOMPSON prepared the application along with supporting financial paperwork to submit to lenders. The application included the financial information necessary to obtain the loan and establish the loan amount to which the company was entitled.

31. Most significantly, defendant TENIA A. THOMPSON listed on each PPP application the company's average monthly payroll which, when multiplied by 2.5, resulted in the amount of the loan to which the company was allegedly entitled. Defendant THOMPSON falsely inflated the average monthly payroll to increase the loan amount she would obtain for the

client. Defendant THOMPSON generally sought from lenders loan amounts that were below a threshold that would have required additional documentation and could have caused increased scrutiny.

32. To further support the PPP loan application for each client, defendant TENIA A. THOMPSON often prepared a form entitled "Employee Payroll Summary by Name" and submitted it to the lender. This form listed the applicant business's employees by name and their wages for a typical month. Defendant THOMPSON falsely inflated those wage figures so they aligned with the false average monthly payroll figures that defendant THOMPSON included in the PPP loan applications.

33. To further support the PPP loan application for each client, defendant TENIA A. THOMPSON also prepared and submitted to the lender a false federal tax return for the applicant business. This tax return inflated the business's "gross receipts or sales" and wages. In most instances, defendant THOMPSON electronically filed the return (or a similar version of the return) with the IRS, and in some instances, she simply submitted the return to the lender without filing it with the IRS.

34. Defendant TENIA A. THOMPSON also created an email address for each client so that she could control signing and transmitting the loan paperwork and further communications with the lender. Defendant THOMPSON falsely made the address appear as if it were the actual email address of the applicant business. Defendant THOMPSON created passwords for the email address and used the email addresses for all communications with the lender. Defendant THOMPSON signed loan applications in the name of the client, making it appear as if the client was authorizing the application and supporting documents, when she was

doing so herself. By operating this way, defendant THOMPSON controlled the entire fraudulent loan application process and monitored the client's receipt of loan proceeds.

35. When the lender approved the loan for each client, defendant TENIA A. THOMPSON used the email address she had created for the client to receive the U.S. Small Business Administration Note for the loan. Defendant THOMPSON electronically signed the Note in the name of the client and emailed it to the lender. Once the Note was signed and returned to the financial institution, the financial institution wired the loan proceeds to an account designated by defendant THOMPSON on behalf of her client.

36. Following the wire transmission of the loan proceeds to each client, defendant TENIA A. THOMPSON had the client issue her a check, made payable to TBTS, for a percentage of the loan proceeds, often as much as 15 to 20 percent or more. This represented defendant THOMPSON's fee for obtaining the loan. To conceal the exorbitant nature of this payment, defendant THOMPSON frequently told the client that the fee also covered additional services, such as payroll services for the client's business, and directed that the memo line of the check to TBTS reflected those additional purported services. Defendant THOMPSON then provided minimal to no additional services in exchange for this payment.

37. At some point after the PPP loan proceeds were received by each client, defendant TENIA A. THOMPSON helped the client ensure that the loan was forgiven under the terms of the PPP and thus that the client did not have to repay any funds.

38. While pursuing the PPP and EIDL loans on behalf of her clients, defendant TENIA A. THOMPSON also filed dozens of fraudulent federal tax returns, including Forms 941 and Forms 1040, for these clients. These returns included false claims for COVID-19-related QSFL and ERC credits, with defendant THOMPSON falsely alleging that her clients paid

substantial wages to employees during the pandemic and, with some of the claims, that the employees were unable to work due to COVID issues.

39. Defendant TENIA A. THOMPSON engaged in this fraudulent activity on behalf of more than 100 clients, generating at least $12 million in fraudulent loan proceeds, at least $5 million in fraudulent tax benefits, and at least $2.2 million in fees for defendant THOMPSON. Moreover, defendant THOMPSON fraudulently attempted to obtain tens of millions of dollars in additional tax benefits on behalf of her clients, but the IRS rejected most of these claims.

**THE WIRES IN FURTHERANCE OF THE SCHEME**

40. On or about each of the dates set forth below, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TENIA A. THOMPSON,**

having devised and intending to devise a scheme to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate and foreign commerce, the writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 1 | 4/12/21 | Defendant THOMPSON's online submission from Philadelphia, PA, of the digitally signed application for a PPP loan, on behalf of N.M. and NANM, LLC, to Blue Ridge Bank in Virginia |
| 2 | 4/15/21 | Defendant THOMPSON's online submission from Philadelphia, PA, of the digitally signed application for a PPP loan, on behalf of D.T. and D.S.T.M., LLC, to Blue Ridge Bank in Virginia |
| 3 | 4/15/21 | Defendant THOMPSON's online submission from Philadelphia, PA, of the digitally signed application for a PPP loan, on behalf of S.W. and F.Y.I., to Blue Ridge Bank in Virginia |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 4 | 4/24/21 | Defendant THOMPSON's online submission from Philadelphia, PA, of the digitally signed application for a PPP loan, on behalf of A.O. and C.S.S., LLC, to Blue Ridge Bank in Virginia |
| 5 | 4/24/21 | Defendant THOMPSON's online submission from Philadelphia, PA, of the digitally signed application for a PPP loan, on behalf of M.P. and L. Industries, to Blue Ridge Bank in Virginia |
| 6 | 4/25/21 | Defendant THOMPSON's online submission from Philadelphia, PA, of the digitally signed application for a PPP loan, on behalf of M.M. and S.T.D., LLC, to Blue Ridge Bank in Virginia |
| 7 | 4/26/21 | The deposit of check #0002 drawn on the Citizens Bank account of NANM, LLC (account ending in #2816) for $19,066, representing defendant THOMPSON's fee, in whole or in part, for handling a fraudulent loan application; the check was deposited into the TD Bank business account of defendant THOMPSON (account ending in #6267) at TD Bank in Philadelphia, Pennsylvania, and it cleared through TD Bank servers in Canada |
| 8 | 4/27/21 | Defendant THOMPSON's online submission from Philadelphia, PA, of the digitally signed application for a PPP loan, on behalf of A.L. and L.P. Holding, LLC, to Blue Ridge Bank in Virginia |
| 9 | 4/30/21 | The deposit of check #0099 drawn on the TD Bank account of F.Y.I. (account ending in #5663) for $31,276, representing defendant THOMPSON's fee, in whole or in part, for handling a fraudulent loan application; the check was deposited into the TD Bank business account of defendant THOMPSON (account ending in #6267) at TD Bank in Philadelphia, Pennsylvania, and it cleared through TD Bank servers in Canada |
| 10 | 5/6/21 | The deposit of check #10001 drawn on the Santander Bank account of S.T.D., LLC (account ending in #0855) for $23,092.40, representing defendant THOMPSON's fee, in whole or in part, for handling a fraudulent loan application; the check was deposited into the TD Bank business account of defendant THOMPSON (account ending in #6267) at TD Bank in Philadelphia, Pennsylvania, and it cleared through TD Bank servers in Canada |
| 11 | 5/6/21 | The deposit of check #7002 drawn on the TD Bank account of D.S.T.M., LLC (account ending in #2621) for $4,751, representing defendant THOMPSON's fee, in whole or in part, for handling a fraudulent loan application; the check was deposited into the TD Bank business account of defendant THOMPSON (account ending in #6267) at TD Bank in Philadelphia, Pennsylvania, which check cleared through TD Bank servers in Canada |
| 12 | 5/7/21 | The deposit of check #2645 drawn on the Chase Bank account of G.I. Corp. (account ending in #3982) for $22,090, representing |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| | | defendant THOMPSON's fee, in whole or in part, for handling a fraudulent loan application; the check was deposited into the TD Bank business account of defendant THOMPSON (account ending in #6267) at TD Bank in Philadelphia, Pennsylvania, and it cleared through TD Bank servers in Canada |
| 13 | 5/18/21 | The deposit of check #0088 drawn on the Philadelphia Federal Credit Union account of C.R.D., LLC (account ending in #6959) for $16,934, representing defendant THOMPSON's fee, in whole or in part, for handling a fraudulent loan application; the check was deposited into the TD Bank business account of defendant THOMPSON (account ending in #6267) at TD Bank in Philadelphia, Pennsylvania, and it cleared through TD Bank servers in Canada |
| 14 | 5/18/21 | The deposit of check #1075 drawn on the Wells Fargo Bank account of F.L.C., LLC (account ending in #2769) for $8,904, representing defendant THOMPSON's fee, in whole or in part, for handling a fraudulent loan application; the check was deposited into the TD Bank business account of defendant THOMPSON (account ending in #6267) at TD Bank in Philadelphia, Pennsylvania, and it cleared through TD Bank servers in Canada |
| 15 | 5/24/21 | The deposit of check #0008 drawn on the Sun Federal Credit Union account of C.S.S., LLC (account ending in #0269) for $17,849.25, representing defendant THOMPSON's fee, in whole or in part, for handling a fraudulent loan application; the check was deposited into the TD Bank business account of defendant THOMPSON (account ending in #6267) at TD Bank in Philadelphia, Pennsylvania, and it cleared through TD Bank servers in Canada |
| 16 | 5/24/21 | The deposit of check #163 drawn on the TD Bank account of T.N.O.B., LLC (account ending in #5376) for $11,831, representing defendant THOMPSON's fee, in whole or in part, for handling a fraudulent loan application; the check was deposited into the TD Bank business account of defendant THOMPSON (account ending in #6267) at TD Bank in Philadelphia, Pennsylvania, and it cleared through TD Bank servers in Canada |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 17 | 6/9/21 | The deposit of check #111 drawn on the Bank of America account of W.E., LLC (account ending in #9770) for $28,244, representing defendant THOMPSON's fee, in whole or in part, for handling a fraudulent loan application; the check was deposited into the TD Bank business account of defendant THOMPSON (account ending in #6267) at TD Bank in Philadelphia, Pennsylvania, and it cleared through TD Bank servers in Canada |

All in violation of Title 18, United States Code, Section 1343.

## COUNT EIGHTEEN
**(Bank Fraud)**

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1. Paragraphs 1 through 10, and 13, of Counts One through Seventeen of this indictment are incorporated here.

## THE SCHEME TO DEFRAUD

2. From in or about April 2020 through at least in or about March 2023, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TENIA A. THOMPSON**

knowingly executed, and attempted to execute, a scheme and artifice to defraud Blue Ridge, and to obtain money and property under the care, custody, and control of Blue Ridge by means of false and fraudulent pretenses, representations, and promises.

3. The purpose of the scheme was for defendant TENIA A. THOMPSON to enrich herself and others by fraudulently obtaining from Blue Ridge PPP loan proceeds on behalf of clients through loan applications that contained false financial information about the clients' businesses. After obtaining these loans to which her clients were not entitled, defendant THOMPSON then charged the clients exorbitant fees for the loans.

## MANNER AND MEANS

It was part of the scheme that:

4. Paragraphs 26 through 39 of Counts One through Seventeen of this indictment are incorporated here.

In violation of Title 18, United States Code, Section 1344.

**COUNT NINETEEN**
**(Bank Fraud)**

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1. Paragraphs 1 through 10, and 12, of Counts One through Seventeen of this indictment are incorporated here.

**THE SCHEME TO DEFRAUD**

2. From in or about April 2020 through in or about March 2021, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TENIA A. THOMPSON**

knowingly executed, and attempted to execute, a scheme and artifice to defraud Cross River, and to obtain money and property under the care, custody, and control of Cross River by means of false and fraudulent pretenses, representations, and promises.

3. The purpose of the scheme was for defendant TENIA A. THOMPSON to enrich herself and others by fraudulently obtaining from Cross River PPP loan proceeds on behalf of clients through loan applications that contained false financial information about the clients' businesses. After obtaining these loans to which her clients were not entitled, defendant THOMPSON then charged the clients exorbitant fees for the loans.

**MANNER AND MEANS**

It was part of the scheme that:

4. Paragraphs 26 through 39 of Counts One through Seventeen of this indictment are incorporated here.

In violation of Title 18, United States Code, Section 1344.

**COUNT TWENTY**
**(Making and Subscribing a False Return)**

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1. Paragraphs 1 through 23 and 25 of Counts One through Seventeen are incorporated here.

**THE FALSE PERSONAL RETURN**

2. On or about November 20, 2022, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TENIA A. THOMPSON**

willfully made and subscribed and filed and caused to be filed with the IRS a false U.S. Individual Income Tax Return, Form 1040, and accompanying forms and schedules, for the calendar year 2021, which were verified by a written declaration that they were made under the penalties of perjury and which defendant THOMPSON did not believe to be true and correct as to every material matter. That Form 1040 reported (i) wages of $401,962 on line 26 of a Schedule C for the business "Tenia Azzaam-Thompson," (ii) wages of $896,994 on line 26 of a Schedule C for the business "Thompson Business and Tax Solutions," (iii) taxable income of $124,884 on line 15 of the Form 1040, and (iv) an amount of tax overpaid of $27,753 on line 34 of the Form 1040, whereas, as the defendant knew, the wages reported on both Schedule Cs were overstated, the taxable income was understated, and the amount of tax overpaid was overstated.

In violation of Title 26, United States Code, Section 7206(1).

## COUNTS TWENTY-ONE THROUGH SIXTY-NINE
## (Aiding and Assisting in the Preparation of False Tax Returns)

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1. Paragraphs 1 through 23, 25, and 38 through 39 of Counts One through Seventeen are incorporated here.

2. On or about the following dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TENIA A. THOMPSON**

willfully aided and assisted in the preparation and presentation to the IRS of two types of tax forms for the taxpayers and calendar years set forth below, which were false and fraudulent as to a material matter, each form constituting a separate count:

a. First, the Employer's Quarterly Federal Tax Returns, Form 941, which, for the relevant tax periods set forth below, reported the taxpayer's (i) numbers of employees (line 1); (ii) wages (line 2); (iii) refundable portion of QSFL (line 13c); (iv) refundable portion of ERC (line 13d); and (v) overpayment (line 15), when, as the defendant knew, these items were materially false; and

b. Second, Forms 1040, which, for the relevant tax periods set forth below, reported the taxpayer's (i) refundable portion of QSFL (line 31 and Schedule 3, line 13); (ii) total refundable credits (line 32); and (iii) overpayment (line 34), when, as the defendant knew, these items were materially false:

| COUNT | DATE | DESCRIPTION |
| --- | --- | --- |
| 21 | 9/29/22 | Form 941 for the second quarter of 2020 on behalf of S.T.D., LLC and its owner, M.M., containing the following false items:<br><br>Line 1 (number of employees) – 25<br>Line 2 (wages) – $276,220<br>Line 13c (refundable portion of QSFL) – $236,499.36<br>Line 15 (overpayment) – $195,863.34. |
| 22 | 9/29/22 | Form 941 for the third quarter of 2020 on behalf of S.T.D., LLC and its owner, M.M., containing the following false items:<br><br>Line 1 (number of employees) – 25<br>Line 2 (wages) – $268,222.00<br>Line 13d (refundable portion of ERC) – $108,370.24<br>Line 15 (overpayment) – $83,962.03. |
| 23 | 9/29/22 | Form 941 for the fourth quarter of 2020 on behalf of S.T.D., LLC and its owner, M.M., containing the following false items:<br><br>Line 1 (number of employees) – 25<br>Line 2 (wages) – $268,116.00<br>Line 13d (refundable portion of ERC) – $108,376.81<br>Line 15 (overpayment) – $83,978.26. |
| 24 | 10/26/22 | Form 941 for the third quarter of 2021 on behalf of S.T.D., LLC and its owner, M.M., containing the following false items:<br><br>Line 1 (number of employees) – 27<br>Line 2 (wages) – $291,078.00<br>Line 13d (refundable portion of ERC) – $184,779.37<br>Line 15 (overpayment) – $144,465.07. |
| 25 | 7/23/22 | Form 1040 for tax year 2021 on behalf of M.M., containing the following false items:<br><br>Line 31 (QSFL amount from Schedule 3, Line 15) – $28,360<br>Line 32 (total refundable credits) – $34,160<br>Line 34 (amount overpaid) – $29,993 |
| 26 | 9/12/22 | Form 941 for the second quarter of 2020 on behalf of NANM, LLC and its president, S.S., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $140,973.00 |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| | | Line 13c (refundable portion of QSFL) – $53,519.13<br>Line 15 (overpayment) – $40,690.58 |
| 27 | 9/12/22 | Form 941 for the third quarter of 2020 on behalf of NANM, LLC and its president, S.S., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $140,973.00<br>Line 13c (refundable portion of QSFL) – $30,171.83<br>Line 13d (refundable portion of ERC) – $35,243.25<br>Line 15 (overpayment) – $52,586.54 |
| 28 | 9/12/22 | Form 941 for the fourth quarter of 2020 on behalf of NANM, LLC and its president, S.S., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $140,973.00<br>Line 13d (refundable portion of ERC) – $31,016.42<br>Line 15 (overpayment) – $18,187.88 |
| 29 | 9/12/22 | Form 941 for the first quarter of 2021 on behalf of NANM, LLC and its president, S.S., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $159,297.50<br>Line 13d (refundable portion of ERC) – $101,631.46<br>Line 15 (overpayment) – $87,135.38 |
| 30 | 9/12/22 | Form 941 for the third quarter of 2021 on behalf of NANM, LLC and its president, S.S., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $159,297.50<br>Line 13c (refundable portion of QSFL) – $56,079.22<br>Line 13d (refundable portion of ERC) – $66,290.18<br>Line 15 (overpayment) – $110,183 |
| 31 | 4/16/22 | Form 1040 for tax year 2020 on behalf of N.M., containing the following false items:<br><br>Line 31 (QSFL amount from Schedule 3, Line 13) – $8,750<br>Line 32 (total refundable credits) – $9,708<br>Line 34 (amount overpaid) – $8,533 |
| 32 | 4/16/22 | Form 1040 for tax year 2021 on behalf of N.M., containing the following false items: |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| | | Line 31 (QSFL amount from Schedule 3, Line 15) – $14,540<br>Line 32 (total refundable credits) – $15,880<br>Line 34 (amount overpaid) – $13,945 |
| 33 | 9/20/22 | Form 941 for the second quarter of 2020 on behalf of "S.L., LLC" and its president, R.B., containing the following false items:<br><br>Line 1 (number of employees) – 12<br>Line 2 (wages) – $104,166.00<br>Line 13c (refundable portion of QSFL) – $39,545.68<br>Line 15 (overpayment) – $30,066.59 |
| 34 | 9/20/22 | Form 941 for the third quarter of 2020 on behalf of "S.L., LLC" and its president, R.B., containing the following false items:<br><br>Line 1 (number of employees) – 12<br>Line 2 (wages) – $104,166.00<br>Line 13c (refundable portion of QSFL) – $22,294.19<br>Line 13d (refundable portion of ERC) – $30,000<br>Line 15 (overpayment) – $42,815.09 |
| 35 | 9/20/22 | Form 941 for the fourth quarter of 2020 on behalf of "S.L., LLC" and its president, R.B., containing the following false items:<br><br>Line 1 (number of employees) – 12<br>Line 2 (wages) – $104,166.00<br>Line 13d (refundable portion of ERC) – $23,541.71<br>Line 15 (overpayment) – $14,062.61 |
| 36 | 9/20/22 | Form 941 for the first quarter of 2021 on behalf of "S.L., LLC" and its president, R.B., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $155,006.25<br>Line 13d (refundable portion of ERC) – $95,389.61<br>Line 15 (overpayment) – $81,284 |
| 37 | 9/20/22 | Form 941 for the second quarter of 2021 on behalf of "S.L., LLC" and its president, R.B., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $155,006.25<br>Line 13c (refundable portion of QSFL) – $54,568.16 |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| | | Line 13d (refundable portion of ERC) – $66,500<br>Line 15 (overpayment) – $106,962.60 |
| 38 | 4/30/22 | Form 1040 for tax year 2020 on behalf of R.B., containing the following false items:<br><br>Line 31 (QSFL from Schedule 3, Line 13) – $13,300<br>Line 32 (total refundable credits) – $13,900<br>Line 34 (amount overpaid) – $10,910 |
| 39 | 5/1/22 | Form 1040 for tax year 2021 on behalf of R.B., containing the following false items:<br><br>Line 31 (QSFL from Schedule 3, Line 15) – $15,510<br>Line 32 (total refundable credits) – $16,727<br>Line 34 (amount overpaid) – $14,606 |
| 40 | 8/1/22 | Form 941 for the second quarter of 2020 on behalf of G.I. Corp. and its owner, H.E., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $167,841.00<br>Line 13c (refundable portion of QSFL) – $149,298.48<br>Line 15 (overpayment) – $124,264.79 |
| 41 | 8/1/22 | Form 941 for the third quarter of 2020 on behalf of G.I. Corp. and its owner, H.E., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $154,073.00<br>Line 13d (refundable portion of ERC) – $65,447.48<br>Line 15 (overpayment) – $70,531.83 |
| 42 | 8/1/22 | Form 941 for the fourth quarter of 2020 on behalf of G.I. Corp. and its owner, H.E., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $161,224.00<br>Line 13d (refundable portion of ERC) – $65,004.11<br>Line 15 (overpayment) – $74,999.72 |
| 43 | 8/2/22 | Form 941 for the first quarter of 2021 on behalf of G.I. Corp. and its owner, H.E., containing the following false items:<br><br>Line 1 (number of employees) – 15<br>Line 2 (wages) – $168,716.00<br>Line 13d (refundable portion of ERC) – $94,539.61<br>Line 15 (overpayment) – $79,186.46 |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 44 | 8/2/22 | Form 941 for the second quarter of 2021 on behalf of G.I. Corp. and its owner, H.E., containing the following false items:<br><br>Line 1 (number of employees) – 25<br>Line 2 (wages) – $258,773.00<br>Line 13d (refundable portion of ERC) – $88,956.08<br>Line 15 (overpayment) – $65,407.73 |
| 45 | 8/2/22 | Form 941 for the third quarter of 2021 on behalf of G.I. Corp. and its owner, H.E., containing the following false items:<br><br>Line 1 (number of employees) – 20<br>Line 2 (wages) – $211,392.00<br>Line 13d (refundable portion of ERC) – $136,934.82<br>Line 15 (overpayment) – $107,657.02 |
| 46 | 8/2/22 | Form 1040 for tax year 2021 on behalf of H.E., containing the following false items:<br><br>Line 31 (QSFL amount from Schedule 3, Line 15) – $30,500<br>Line 32 (total refundable credits) – $30,500<br>Line 34 (amount overpaid) – $26,337 |
| 47 | 7/30/22 | Form 941 for the second quarter of 2020 on behalf of L. Industries and its owner, M.P., containing the following false items:<br><br>Line 1 (number of employees) – 19<br>Line 2 (wages) – $231,621.00<br>Line 13c (refundable portion of QSFL) – $200,222<br>Line 15 (overpayment) – $166,030.98 |
| 48 | 7/30/22 | Form 941 for the third quarter of 2020 on behalf of L. Industries and its owner, M.P., containing the following false items:<br><br>Line 1 (number of employees) – 19<br>Line 2 (wages) – $170,446.00<br>Line 13d (refundable portion of ERC) – $73,864.70<br>Line 15 (overpayment) – $52,729.40 |
| 49 | 7/30/22 | Form 941 for the fourth quarter of 2020 on behalf of L. Industries and its owner, M.P., containing the following false items:<br><br>Line 1 (number of employees) – 19<br>Line 2 (wages) – $198,620.00<br>Line 13d (refundable portion of ERC) – $70,371.12 |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| | | Line 15 (overpayment) – $45,742.24 |
| 50 | 7/30/22 | Form 941 for the first quarter of 2021 on behalf of L. Industries and its owner, M.P., containing the following false items:<br><br>Line 1 (number of employees) – 19<br>Line 2 (wages) – $220,847.00<br>Line 13d (refundable portion of ERC) – $118,873.92<br>Line 15 (overpayment) – $98,140.48 |
| 51 | 7/30/22 | Form 941 for the second quarter of 2021 on behalf of L. Industries and its owner, M.P., containing the following false items:<br><br>Line 1 (number of employees) – 29<br>Line 2 (wages) – $380,621.00<br>Line 13d (refundable portion of ERC) – $71,803<br>Line 15 (overpayment) – $24,606.00 |
| 52 | 7/30/22 | Form 941 for the third quarter of 2021 on behalf of L. Industries and its owner, M.P., containing the following false items:<br><br>Line 1 (number of employees) – 29<br>Line 2 (wages) – $314,643.00<br>Line 13d (refundable portion of ERC) – $198,437.68<br>Line 15 (overpayment) – $154,859.62 |
| 53 | 7/30/22 | Form 941 for the fourth quarter of 2021 on behalf of L. Industries and its owner, M.P., containing the following false items:<br><br>Line 1 (number of employees) – 29<br>Line 2 (wages) – $245,399.00<br>Line 13c (refundable portion of ERC) – $212,995.01<br>Line 15 (overpayment) – $176,716.92 |
| 54 | 9/21/22 | Form 941 for the second quarter of 2020 on behalf of I. Contractors and its owner, O.T., containing the following false items:<br><br>Line 1 (number of employees) – 14<br>Line 2 (wages) – $121,901.50<br>Line 13c (refundable portion of QSFL) – $46,278.80<br>Line 15 (overpayment) – $35,185.77 |
| 55 | 9/21/22 | Form 941 for the third quarter of 2020 on behalf of I. Contractors and its owner, O.T., containing the following false items: |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| | | Line 1 (number of employees) – 14<br>Line 2 (wages) – $121,901.50<br>Line 13c (refundable portion of QSFL) – $26,090.04<br>Line 13d (refundable portion of ERC) – $35,000<br>Line 15 (overpayment) – $49,997.01 |
| 56 | 9/21/22 | Form 941 for the fourth quarter of 2020 on behalf of I. Contractors and its owner, O.T., containing the following false items:<br><br>Line 1 (number of employees) – 14<br>Line 2 (wages) – $121,901.50<br>Line 13d (refundable portion of ERC) – $27,442.10<br>Line 15 (overpayment) – $16,349.07 |
| 57 | 9/21/22 | Form 941 for the first quarter of 2021 on behalf of I. Contractors and its owner, O.T., containing the following false items:<br><br>Line 1 (number of employees) – 18<br>Line 2 (wages) – $183,865.50<br>Line 13d (refundable portion of ERC) – $114,600.34<br>Line 15 (overpayment) – $97,868.58 |
| 58 | 9/21/22 | Form 941 for the second quarter of 2021 on behalf of I. Contractors and its owner, O.T., containing the following false items:<br><br>Line 1 (number of employees) – 18<br>Line 2 (wages) – $183,865.50<br>Line 13c (refundable portion of QSFL) – $54,577.41<br>Line 13d (refundable portion of ERC) – $84,000<br>Line 15 (overpayment) – $121,845.64 |
| 59 | 9/21/22 | Form 941 for the third quarter of 2021 on behalf of I. Contractors and its owner, O.T., containing the following false items:<br><br>Line 1 (number of employees) – 18<br>Line 2 (wages) – $183,865.50<br>Line 13c (refundable portion of QSFL) – $54,577.41<br>Line 13d (refundable portion of ERC) – $81,333.95<br>Line 15 (overpayment) – $121,845.64 |
| 60 | 11/16/22 | Form 941 for the second quarter of 2020 on behalf of L.L. Solutions and its owners, A.O. and L.B., containing the following false items: |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| | | Line 1 (number of employees) – 18<br>Line 2 (wages) – $215,638.00<br>Line 13c (refundable portion of QSFL) – $169,240.44<br>Line 15 (overpayment) – $138,468.99 |
| 61 | 11/16/22 | Form 941 for the third quarter of 2020 on behalf of L.L. Solutions and its owners, A.O. and L.B., containing the following false items:<br><br>Line 1 (number of employees) – 18<br>Line 2 (wages) – $195,644.00<br>Line 13d (refundable portion of ERC) – $77,870.07<br>Line 15 (overpayment) – $60,066.46 |
| 62 | 11/16/22 | Form 941 for the fourth quarter of 2020 L.L. Solutions and its owners, A.O. and L.B., containing the following false items:<br><br>Line 1 (number of employees) – 18<br>Line 2 (wages) – $185,755.00<br>Line 13d (refundable portion of ERC) – $78,483.19<br>Line 15 (overpayment) – $61,579.48 |
| 63 | 11/16/22 | Form 941 for the first quarter of 2021 on behalf of L.L. Solutions and its owners, A.O. and L.B., containing the following false items:<br><br>Line 1 (number of employees) – 23<br>Line 2 (wages) – $252,066.00<br>Line 13d (refundable portion of ERC) – $145,371.91<br>Line 15 (overpayment) – $122,433.91 |
| 64 | 11/16/22 | Form 941 for the second quarter of 2021 on behalf of L.L. Solutions and its owners, A.O. and L.B., containing the following false items:<br><br>Line 1 (number of employees) – 23<br>Line 2 (wages) – $252,066.50<br>Line 13d (refundable portion of ERC) – $145,371.87<br>Line 15 (overpayment) – $122,027.82 |
| 65 | 11/16/22 | Form 941 for the third quarter of 2021on behalf of L.L. Solutions and its owners, A.O. and L.B., containing the following false items:<br><br>Line 1 (number of employees) – 23<br>Line 2 (wages) – $252,066.50<br>Line 13d (refundable portion of ERC) – $157,345.03<br>Line 15 (overpayment) – $122,433.82 |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 66 | 11/16/22 | Form 941 for the fourth quarter of 2021 on behalf of L.L. Solutions and its owners, A.O. and L.B., containing the following false items:<br><br>Line 1 (number of employees) – 23<br>Line 2 (wages) – 252,066.50<br>Line 13c (refundable portion of QSFL) – $150,273.06<br>Line 15 (overpayment) – $117,196.15 |
| 67 | 5/2/22 | Form 1040 for tax year 2021 on behalf of L.B., containing the following false items:<br><br>Line 31 (QSFL amount from Schedule 3, Line 15) – $14,690<br>Line 32 (total refundable credits) – $16,068<br>Line 34 (amount overpaid) – $14,267 |
| 68 | 5/20/22 | Form 1040 for tax year 2021 on behalf of A.O., containing the following false items:<br><br>Line 31 (QSFL amount from Schedule 3, Line 15) – $28,940<br>Line 32 (total refundable credits) – $28,940<br>Line 34 (amount overpaid) – $28,940.00 |
| 69 | 7/18/23 | Form 1040 for tax year 2022 on behalf of J.L., containing the following false items:<br><br>Line 31 (QSFL amount from Schedule 3, Line 15) -- $25,000<br>Line 32 (total refundable credits) - $25,000<br>Line 34 (amount overpaid) - $21,528 |

All in violation of Title 26, United States Code, Section 7206(2).

**NOTICE OF FORFEITURE NO. 1**

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Section 1343, as set forth in this indictment, defendant

**TENIA A. THOMPSON**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, including, but not limited to, the sum of $2,200,000 (forfeiture money judgment).

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(l)(C).

## NOTICE OF FORFEITURE NO. 2

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Section 1344, as set forth in this indictment, defendant

**TENIA A. THOMPSON**

shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such violations, including, but not limited to, the sum of $2,200,000 (forfeiture money judgment).

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(2).

**A TRUE BILL:**

[redacted]

**FOREPERSON**

Christine E Sykes for

**DAVID METCALF**
**UNITED STATES ATTORNEY**

*No.*___________

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

TENIA A. THOMPSON

**INDICTMENT**

18 U.S.C. § 1343 (wire fraud – 17 counts)
18 U.S.C. § 1344 (bank fraud – 2 counts)
26 U.S.C. § 7206(1) (filing a false tax return – 1 count)
26 U.S.C. § 7206(2) (aiding the filing of a false tax return – 49 counts)
Notices of Forfeiture

A true bill.

[redacted]

Foreman

Filed in open court this ________________ day,
Of ______________ A.D. 20_______

Clerk

Bail, $__________